NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THOMAS JAMES CLAUSO, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 14-5280 (JMV) |
| | : | |
| v. | : | |
| | : | **OPINION** |
| JUDGE SOLOMON, *et al.*, | : | |
| | : | |
| Defendants. | : | |

APPEARANCES:

Thomas James Clauso
Northern State Prison
168 Frontage Road
Newark, NJ 07114
    Petitioner, *pro se*

David Andrew Tuason
State of New Jersey
Office of the Attorney General
25 Market Street
Trenton, NJ 08625
    On behalf of the Honorable Lee A. Solomon, Associate Justice; the Estate of the Honorable E. Stevenson Fluharty, J.S.C.; the Honorable Edward J. McBride, Jr., J.S.C.; George Stillwell, New Jersey State Parole Board, Joan Spadea, and Robin G. Stacy, Esq., Director of the New Jersey State Parole Board ("the State Defendants")

**JOHN MICHAEL VAZQUEZ**, United States District Judge

On August 22, 2014, Plaintiff, a prisoner presently confined in Northern State Prison, initiated this civil rights action related to his 1988 state court conviction in Camden, New Jersey. (ECF No. 1.) On June 22, 2015, the case was dismissed without prejudice because Plaintiff's claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). (ECF Nos. 42, 43.) On May 27, 2016, Plaintiff filed an amended complaint. (Am. Compl., ECF No. 61.) This matter comes before

the Court upon the motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) (lack of jurisdiction) and 12(b)(6) (failure to state a claim) by the State Defendants. (ECF No. 70.) Plaintiff filed a brief opposing the motion to dismiss, and a certification of facts. (ECF Nos. 72, 76.) The Court will also screen the conditions of confinement claim against Mr. Lanigan,[1] pursuant to 28 U.S.C. § 1915A.[2]

I.  THE AMENDED COMPLAINT

Plaintiff purports to incorporate his original complaint into his amended complaint. (ECF No. 61 at 1.) Plaintiff's original complaint, brought under 42 U.S.C. § 1983, was dismissed as

---

[1] Petitioner misspelled Mr. Lanigan's name as "Lonigan" in the caption of the Amended Complaint. Gary M. Lanigan is the Commissioner of the New Jersey Department of Corrections. *See* http://www.state.nj.us/corrections/pages/about_us/Commissioner_bio.html (last visited April 27, 2017). It does not appear that the Amended Complaint was served on Mr. Lanigan. Screening the claims against Lanigan in the Amended Complaint under § 1915A is appropriate because screening required as early as feasible. 28 U.S.C. § 1915A(a).

[2] 28 U.S.C. § 1915A provides:

> (a) Screening.--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) Grounds for dismissal.--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
>
>> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>>
>> (2) seeks monetary relief from a defendant who is immune from such relief.
>
> (c) Definition.--As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

barred by *Heck v. Humphrey*. (ECF Nos. 42, 43). Plaintiff admits in the amended complaint that his post-conviction proceedings remain pending in state court. (ECF No. 61 at 4.)

However, in his amended complaint, Plaintiff did not cure the defect in his original complaint by establishing "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 487. Therefore, by Order dated February 1, 2017 (ECF No. 79), the Court struck the following sentence from the amended complaint: "Plaintiff incorporates the original complaint with this complaint as amended." The Court will review the remainder of the amended complaint to determine if Plaintiff has stated any claims that are not barred by *Heck* and, if so, whether there is any other basis for dismissal of his claims.

The gravamen of Plaintiff's amended complaint is that Judge Fluharty, who presided over Plaintiff's state court criminal trial, violated Plaintiff's right to due process by not disclosing the judge's conflict of interest. The alleged conflict is that in 1972, Judge Fluharty (when the judge was a practicing attorney) handled the adoption of Plaintiff's daughter by Judge Fluharty's sister. (ECF No. 61 at 2.) Plaintiff alleged Judge Fluharty's rulings in Plaintiff's criminal case were biased by the fact that his sister adopted Plaintiff's daughter, and this bias resulted in Plaintiff's conviction. (*Id.*) Plaintiff did not learn until 2012 that he had a daughter or that Judge Fluharty had represented his sister in adopting Plaintiff's daughter. (*Id.*) This discovery formed the basis of Plaintiff's request for post-conviction relief, which remains pending. (*Id.* at 3-4.)

Plaintiff further alleged that his post-conviction proceedings have been tainted by the connections between Judge Fluharty and his wife with Judge McBride and Justice Solomon, both of whom were involved in Plaintiff's post-conviction proceedings. (*Id.* at 3.) Then Judge

Solomon[3] presided over Plaintiff's 2013 motion for a new trial without disclosing that he had supervised Joan Spadea, Judge Fluharty's wife, when Solomon was a prosecutor in 1996-2002. (*Id.*) Plaintiff alleged Judge McBride, who presided over Plaintiff's post-conviction motion, "stripped plaintiff's attorneys from his defense in an attempt to shut down this motion." (*Id.* at 4.) Plaintiff alleged that Spadea "saw to it that my 3rd degree and fourth-degree assault charges went to a 12 count indictment which included a charge for attempted murder . . ." (*Id.* at 3.)

Plaintiff summarizes his claims as follows:

> [a]ll the named persons above have violated plaintiff's 14th Amendment rights and due process by the perversion of lawfully initiated process to illegitimate ends. These officials, judges, prosecutors, used the process to manipulate the judicial process to serve themselves and their families.

(ECF No. 61 at 1.)

Plaintiff also raised Section 1983 claims against the New Jersey State Parole Board and one of its members, Robin G. Stacy, Esq. In his amended complaint, Plaintiff alleged:

> While Fluharty's wife was in the prosecutor's office, a letter was sent to the Parole Board that convinced the Parole Board not to release me. Plaintiff has well passed the 25 to life sentence. The Parole Board never finalized the last hearing on Plaintiff when Plaintiff appealed. The Parole Board said a confidential report from the prosecutor's office was a major reason in denying parole. Plaintiff could not get the report. Plaintiff sent motions to the Appellate Court and has heard nothing. In 2 years nothing concerning parole no[t] one motion was answered. I'm up against a Supreme Court Judge (sic) Solomon. . . .
>
> I wrote the Chairman of the Parole Board. I wrote Robin Stacy, Esq., repeatedly, (of the New Jersey State Parole Board) with a letter to the head of the Parole Board and I gave every Parole Board member a copy of my letters. I received no response. I never received a copy of the letter that the Parole Board used.

---

[3] Justice Solomon was elevated to the New Jersey Supreme Court in 2014.

(ECF No. 61 at 5-6.)

Finally, Plaintiff alleged the following against Gary Lanigan, Commissioner of the New Jersey Department of Corrections ("N.J. DOC"):

> Even Mr. Lanigan, the administrator cannot follow the law. Inmates cannot get out of their cells if they are in ad-seg[, administrative segregation].[4] This is in violation of s 1350 USC,[5] for example, in Northern State Prison ad-seg, one wing is attached to 2 wing has been condemned, closed down even though they paint it all up so cosmetically we are allowed out one day out of six days for recreation. For example, on April 27, 2016 there was no yard recreation because Major Kerner needed the guard in charge to do something else. When all the inmates complained they were told to shut up or they would get a charge for inciting a riot. Check the log book for that day. Plaintiff is confined to a cell with another male 24/7, 6 days a week. There is no curtain by the toilet. Some of the inmates are predators. There was just a problem, with a kid who refused sex with another inmate (who had seen the kid at the toilet) and was stabbed so bad he needed 185 stitches in his face.
>
> Plaintiff was confined in an isolation cell for 146 days in East Jersey State Prison by the [ ][6] visits, no recreation of any kind. I had to crawl under my bed to get out of the light even so I could not sleep. I did not have my cane, brace or walker for 90 days. I wrote Commissioner Lanigan 10 letters. On the rare occasion that a psychiatrist would come, they stopped by for a minute and pretended nothing was wrong. I complained I couldn't sleep, that there was no recreation and there was no one to talk to but God. To no avail. This is in violation of s 1350 United States Code against torture. I suffered great mental anguish.

---

[4] "Administrative segregation" in New Jersey is defined as "removal of an inmate from the general population of a correctional facility to a close custody unit because of one or more disciplinary infractions or other administrative considerations." N.J.A.C. 10A:1-2.2.

[5] 28 U.S.C. § 1350, which provides, "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States," is inapplicable to Plaintiff, who does not allege that he is not a United States citizen. *See Rasul v. Bush*, 542 U.S. 466, 485 (2004) ("28 U.S.C. § 1350 explicitly confers the privilege of suing for an actionable 'tort . . . committed in violation of the law of nations or a treaty of the United States' on aliens alone....")

[6] There is a page break here in the amended complaint, and it appears that the end of this sentence and the beginning of the next sentence are missing, but the page numbers are consecutive.

(ECF No. 61 at 8-9.)

II.     DISCUSSION

   A.     Standard of Review

Courts must liberally construe pleadings that are filed *pro se*. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Thus, "a *pro se* complaint, however inartfully pleaded, must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (internal quotation marks omitted). "Court personnel reviewing *pro se* pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and what claims she may be making." *See Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339-40 (3d Cir. 2011) (quoting Jonathan D. Rosenbloom, *Exploring Methods to Improve Management and Fairness in Pro Se Cases: A Study of the Pro Se Docket in the Southern District of New York*, 30 Fordham Urb. L.J. 305, 308 (2002)).

Under Federal Rule of Civil Procedure 12(b)(1), courts may dismiss defendants who are immune from suit if it appears "that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." *Grohs v. Yatauro*, 984 F.Supp.2d 273, 280 (D.N.J. 2013) (quoting *Cardio–Medical Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983)).

Under Federal Rule of Civil Procedure 12(b)(6), courts may dismiss a complaint for failure to state a claim upon which relief may be granted. For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Id.* at 789. A complaint that only pleads facts that are consistent with a defendant's liability, however, "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 786.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, therefore, they are not entitled to an assumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." Fowler, 578 F.3d at 210. As noted, because Plaintiff is proceeding *pro se*, the Court is to liberally construe the amended complaint in his favor. "The Court need not, however, credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *D'Agostino v. CECOM RDEC*, No. 10-4558, 2010 WL 3719623, at *1 (D.N.J. Sept. 10, 2010). Moreover, if a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002).

The Court has not considered any materials outside the amended complaint, submitted by the parties, in addressing the State Defendants' motion to dismiss. Thus, the Court need not construe the motion to dismiss as a motion for summary judgment, and the Court will accept all well-pleaded facts in the amended complaint as true. *See* Federal Rule of Civil Procedure 12(d)

("If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56).

B. Substantive Claims

Plaintiff raises claims under 42 U.S.C. §§ 1983 and 1985, and civil RICO.

42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citation omitted).

42 U.S.C. § 1985(3) provides, in pertinent part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

The elements of a prima facie claim under § 1985(3) include: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy;

and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)).

The Court construes Plaintiff's civil RICO conspiracy claims as arising under 18 U.S.C. § 1962(d). 18 U.S.C. § 1962 provides, in relevant part:

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. . . .
>
> (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

"[I]n order to state a claim under RICO subsection [1692](d), a plaintiff must allege (1) agreement to commit the predicate acts . . ., and (2) knowledge that those acts were part of a pattern of racketeering activity conducted in such a way as to violate section 1962(a), (b), or (c)." *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989) (quoting *Odesser v. Continental Bank*, 676 F.Supp. 1305, 1312 (E.D.Pa. 1987)).

1.      New Jersey State Parole Board

The New Jersey State Parole Board is not a "person" within the language of 42 U.S.C. § 1983. *Madden v. New Jersey State Parole Bd.*, 438 F.2d 1189, 1190 (3d Cir. 1971); *Thrower v. The New Jersey State Parole Bd.*, 438 F. App'x 71, 72 (3d Cir. 2011). Therefore, Plaintiff's Section 1983 claim against the New Jersey State Parole Board is dismissed with prejudice.

2.      Eleventh Amendment Immunity

In his amended complaint, Plaintiff did not specify whether he is suing the State Defendants in their official or individual capacities. The State Defendants contend Plaintiff's Section 1983 claims for damages against them in their official capacities are barred by the Eleventh Amendment. (ECF No. 70-1 at 25-30.)

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Thus, the Eleventh Amendment bars suits against a State unless the State has waived its immunity or Congress has exercised its power to waive that immunity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989). Congress, in enacting Section 1983, did not override Eleventh Amendment immunity. *Id.* New Jersey has not waived sovereign immunity for suits brought under Section 1983. *Mierzwa v. U.S.*, 282 F. App'x 973, 976 (3d Cir. 2008)).

> [A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985). As such, it is no different from a suit against the State itself. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165–166, 105 S.Ct. 3099, 3104–3105, 87 L.Ed.2d 114 (1985); *Monell* [*v. Department of Social Services of City of New York*, 436 U.S. 658,] 690, n. 55, 98 S.Ct. [2018], 2035, n. 55 [1978]. . . . [N]either a State

>  nor its officials acting in their official capacities are "persons" under § 1983.

*Will*, 491 U.S. at 71. *Id.*

New Jersey county prosecutors are arms of the State, for purposes of Eleventh Amendment immunity, when sued for damages under 42 U.S.C. § 1983 for claims arising out of their classic law enforcement and investigative functions. *Beightler v. Office of Essex County Prosecutor*, 342 F. App'x 829, 832 (3d Cir. 2009) (citing *Coleman v. Kaye*, 87 F.3d 1491, 1499-1505 (3d Cir. 2009)). State parole board members are also state officials entitled to Eleventh Amendment immunity when sued in their official capacities. *Keller v. PA Bd. of Probation and Parole*, 240 F. App'x 477, 479 (3d Cir. 2007) (affirming district court's dismissal of § 1983 official capacity claims against members of Pennsylvania Board of Probation and Parole).

The Court construes Plaintiff's Section 1983 claims against Judge Fluharty, Judge McBride, Justice Solomon, and former county prosecutors Joan Spadea, and George Stillwell as brought against them in their official capacities. As a result, the Court dismisses such claims as barred by the Eleventh Amendment because in their official capacities, they are not "persons" subject to liability under Section 1983. Although Plaintiff might amend the complaint to sue these individuals in their individual capacities, for the reasons discussed below, they are otherwise immune from suit thereby rendering amendment futile.

### 3. Judicial Immunity

The State Defendants argue Justice Solomon, Judge McBride, and Judge Fluharty are entitled to absolute judicial immunity because there was subject matter jurisdiction in Plaintiff's state court cases over which they presided and Plaintiff's allegations arise from rulings they made. (ECF No. 70-1 at 30-31.) Plaintiff responds that judges are not immune when they violate due process rights and violate judicial ethics. (ECF No. 72 at 2.)

"A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (quoting Azubuko v. Royal, 443 F.3d 302, 303 (3d Cir. 2006)). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted 'in the clear absence of all jurisdiction.'" Id. (citations omitted).

The amended complaint indicates that Justice Solomon, Judge McBride, and Judge Fluharty had jurisdiction to preside over Plaintiff's state court cases, and Plaintiff's allegations against them relate to their rulings in those actions. Therefore, they are entitled to absolute judicial immunity, and the Section 1983 claims and civil RICO conspiracy claims against them are dismissed with prejudice.

4. Prosecutorial Immunity

The State Defendants contend George Stillwell and Joan Spadea have prosecutorial immunity from Plaintiff's claims because Stillwell prosecuted the case that resulted in Plaintiff's incarceration, and Spadea "appears to have worked in the Prosecutor's Office at this time as well." (ECF No. 70-1 at 35.)

Prosecutors have absolute immunity for prosecutorial actions that are "intimately associated with the judicial phase of the criminal process." Van de Kamp v. Goldstein, 555 U.S. 335, 341 (2009) (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). Absolute immunity applies when a prosecutor is acting "as an officer of the court" but not when a prosecutor engages in investigative or administrative tasks. Id. at 342. A functional approach should be applied to determine if a prosecutor's activity is taken as an officer of the court or if it is investigative or administrative. Id.

Plaintiff alleged that Spadea "saw to it that my 3rd degree and fourth-degree assault charges went to a 12 count indictment which included a charge for attempted murder. . ." (ECF No. 61 at 3.) "Prosecutorial immunity applies when a prosecutor prepares to initiate a judicial proceeding." *Van de Kamp*, 555 U.S. at 343 (quoting *Burns v. Reed*, 500 U.S. 478, 492 (3d Cir. 1991)); *Hyatt v. County of Passaic*, 340 F. App'x 833, 837 (3d Cir. 2009) (prosecutors have absolute immunity for the acts of charging and indicting). Therefore, Spadea is immune for her conduct of deciding to bring a twelve-count indictment. The Section 1983 due process claim, Section 1983 and Section 1985 conspiracy claims, and civil RICO conspiracy claims against Spadea are dismissed with prejudice.

Apart from conclusory allegations that Stillwell was aligned with Judge Fluharty in Plaintiff's 1988 prosecution, which in itself does not plausibly state a Section 1983 or Section 1985 claim, Plaintiff alleged "the prosecutor's office operated outside the scope of their duties, going so far as notifying the paper that plaintiff would also be charged with escape." (ECF No. 61 at 3.)[7] "Communication with the press is not core prosecutorial activity," and, at best, is only an administrative function subject to qualified immunity. *Kulwicki v. Dawson*, 969 F.2d 1454, 1466-67 (3d Cir. 1992)). Therefore, to the extent Plaintiff contends that it was Stillwell who communicated with the press, Stillwell is not entitled to absolute prosecutorial immunity for this due process claim.

---

[7] In his original complaint, Plaintiff alleged it was Stillwell who told the press Plaintiff would be charged with escape. (ECF No. 1 at 6.)

5. Statute of Limitations

The State Defendants assert an additional basis to dismiss the claims against Stillwell, expiration of the statute of limitations. (ECF No. 70-1 at 20.) "[A] district court may *sua sponte* dismiss a claim as time-barred under 28 U.S.C. § 1915(A)(b)(1) where it is apparent from the complaint that the applicable limitations period has run." *Hunterson v. DiSabato*, 244 F. App'x 455, 457 (3d Cir. 2007).

There is a two-year statute of limitations for claims brought under Section 1983. *See O'Connor v. City of Newark*, 440 F.3d 125, 126-27 (3d Cir. 2006) ("[f]or section 1983 actions in New Jersey, '[the governing personal injury] statute is N.J.S.A. 2A:14–2, which provides that an action for injury to the person caused by wrongful act, neglect, or default, must be convened within two years of accrual of the cause of action") (quoting *Brown v. Foley*, 810 F.2d 55, 56 (3d Cir. 1987)). Federal law governs when a cause of action accrues. *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010). The "cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages." *Id.* at 185-86 (quoting *Wallace v. Kato*, 549 U.S. 384, 391 (2007) (quotation omitted). Plaintiff alleged damages arising from his imprisonment, which he contends was the result of violation of his right to a fair trial. His trial occurred in 1988.

To the extent it is not inconsistent with federal law, state law governs whether a limitations period should be tolled. Id. at 185 (citing *Wilson v. Garcia*, 471 U.S. 261, 269 (1985) superseded by statute on other grounds, 28 U.S.C. § 1658(a); *Ammlung v. City of Chester*, 494 F.2d 811, 815 (3d Cir. 1974). Under the New Jersey discovery rule, "the accrual of the claim will be postponed until the 'injured party discovers, or by exercise of reasonable diligence and intelligence should

15

have discovered[,] that he may have a basis for an actionable claim.'"' *Id.* (quoting *Lopez v. Swyer*, 62 N.J. 267 (1973); *see Lapka v. Porter Hayden Co.*, 745 A.2d 525, 530 (2000)).

Pursuant to the statute of limitations, Plaintiff's claim against Stillwell should have been brought by 1990 at the latest. Moreover, Plaintiff has presented no basis for why the claims concerning Stillwell should be tolled. The due process claim against George Stillwell is dismissed with prejudice because it is clearly barred by the statute of limitations.

### 6. Qualified Immunity

Having found that Joan Spadea is entitled to absolute prosecutorial immunity, and the Section 1983 claim against George Stillwell is barred by the statute of limitations, the Court need not address the State Defendants' argument that Spadea and Stillwell are entitled to qualified immunity. The State Defendants also contend that Robin Stacy, a New Jersey Parole Board member, is entitled to qualified immunity because there is no clearly established constitutional right to have parole papers withheld from the prosecutor's office. (ECF No. 70-1 at 38.)

It appears that the State Defendants misconstrue the claim against Robin Stacy. Plaintiff alleged the prosecutor's office sent a letter to the Parole Board, which was the basis for denying parole. (ECF No. 61 at 5-6.) Plaintiff requested that Robin Stacy provide a copy of the letter from the prosecutor's office so he could challenge the parole decision, but his request went unanswered. (*Id.* at 8.) The State Defendants did not address whether Stacy is entitled to qualified immunity for failing to send Plaintiff a copy of the prosecutor's letter to the Parole Board, so Plaintiff could respond to the contents of the letter in appealing the parole decision.

In any event, Plaintiff's claim against Stacy is barred by *Heck*. The *Heck* favorable termination rule applies to allegations of improper denial of release on parole because such a claim "plainly implicates the validity of continued confinement." *Connolly v. Arroyo*, 293 F. App'x 175,

177 (3d Cir. 2008) (citing *Williams v. Consovoy*, 453 F.3d 173 (3d Cir. 2006)). It is clear from the amended complaint that Plaintiff did not obtain a favorable termination of the Parole Board's denial of parole. Therefore, Plaintiff's Section 1983 claim against Robin Stacy is dismissed without prejudice because it is barred by *Heck*.

7. <u>Gary Lanigan</u>

The Court will construe the allegations in the amended complaint against Commissioner Gary Lanigan as conditions of confinement claims under the Eighth Amendment.

> A claim of inhumane prison conditions may rise to the level of an Eighth Amendment violation where the prison official "deprived the prisoner of the minimal civilized measure of life's necessities" and "acted with deliberate indifference in doing so, thereby exposing the inmate to a substantial risk of serious damage to [his] future health." *Parkell v. Danberg*, 833 F.3d 313, 335 (3d Cir. 2016) (quoting *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015)).

*Palakovic v. Wetzel*, ---F.3d ----, 2017 WL 1360772 (3d Cir. Apr. 14, 2017). "A prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Plaintiffs "can show this by establishing that the risk was obvious." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

Plaintiff has not alleged any facts indicating that N.J. DOC Commissioner Gary Lanigan knew of the particular conditions Plaintiff was subjected to in "ad-seg." in Northern State Prison or in an "isolation cell" in East Jersey State Prison, nor has he adequately alleged how those conditions posed a substantial risk of serious damage to his future health. For instance, with respect to the "isolation cell," Plaintiff does not allege that Lanigan knew the lights were kept on in the cell all night, nor does he allege that the period of time where the lights prevented him from

17

sleeping was long enough to present a serious risk to his health. *See Huertas v. Secretary Pennsylvania Dep't of Corr.*, 533 F. App'x 64, 68 n.7 ("[i]n some instances where continuous lighting causes inmates to suffer physical and psychological harm, courts have held that living in constant illumination is without penological justification.") With respect to conditions in "ad-seg." in Northern State Prison, Plaintiff does not allege Lanigan was aware that two inmates shared a cell "24/7" for six days a week or that inmates were subjected to an obvious risk of attack by other inmates.

A plaintiff may also allege an Eighth Amendment claim against a supervisory official "based on policies or practices where the plaintiff alleges that the supervisors 'knew or were aware of and disregarded an excessive risk to the [plaintiff's] health or safety[.]'" *Palakovic*, 2017 WL 1360772, at *16 (quoting *Beers-Capitol v. Whetzel,* 256 F.3d 120, 135 (3d Cir. 2001).

> [T]he plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice.

*Beers-Capitol*, 256 F.3d at 134 (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). A plaintiff can make out a supervisor liability claim "by showing that 'the supervisory official failed to respond appropriately in the face of an awareness of a pattern of such injuries.'" *Id.* A plaintiff may also make out a supervisory liability claim in situations where "the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of supervisory officials to respond will alone support findings of the existence of an unreasonable risk, of knowledge of that unreasonable risk, and of indifference to it."

The amended complaint alleges a practice in administrative segregation at Northern State Prison of confining two inmates to a cell "24/7" for six days a week, without recreation and without

a curtain around the toilet. Plaintiff fails to allege that the risk of constitutional harm was so great and so obvious to support a finding of deliberate indifference by a remote supervisory official to that risk. Plaintiff's additional allegation of one instance of inmate-on-inmate violence is insufficient to hold the Commissioner of the New Jersey Department of Corrections liable on a theory that the official failed to respond "in the face of an awareness of a pattern of such injuries." The amended complaint does not allege sufficient facts to state a supervisory liability claim against Gary Lanigan under the Eighth Amendment. The Section 1983 claims for conditions in Northern State Prison and East Jersey State Prison are dismissed without prejudice.

## III. CONCLUSION

For the reasons discussed above, the Court grants the State Defendants' motion to dismiss as follows. The Section 1983 claim against the New Jersey State Parole Board is dismissed with prejudice because it is not a "person" subject to suit under Section 1983. Plaintiff's Section 1983 claims, Section 1985 conspiracy claims, and civil RICO conspiracy claims against Judge Fluharty, Judge McBride, and Justice Solomon are dismissed with prejudice based on absolute judicial immunity. The Section 1983 claims against Judge Fluharty, Judge McBride, and Justice Solomon, in their official capacities, are also barred by the Eleventh Amendment. Plaintiff's Section 1983 and Section 1985 conspiracy claims against Defendant Spadea are dismissed with prejudice based on absolute prosecutorial immunity. Plaintiff's Section 1985 conspiracy claim against Stillwell is dismissed without prejudice for failure to state a claim; Plaintiff's Section 1983 due process claim against Defendant Stillwell is dismissed with prejudice because it is barred by the statute of limitations. Plaintiff's Section 1983 claim against Robin Stacy is dismissed without prejudice because it is barred by *Heck*. Plaintiff's § 1983 claims against Gary Lanigan are dismissed without prejudice.

An appropriate order follows.

DATED: April 27, 2017

s/ John Michael Vazquez  
JOHN MICHAEL VAZQUEZ  
United States District Judge